UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

**IRINA KOPTEVA**

Plaintiff,

v.

**STATE BOARD FOR COMMUNITY COLLEGES AND OCCUPATIONAL EDUCATION, governing body of Colorado Community College System, a/k/a and d/b/a PIKES PEAK COMMUNITY COLLEGE**

Defendants.

---

### COMPLAINT AND JURY DEMAND

---

Plaintiff, Dr. Irina Kopteva ("Dr. Kopteva"), by and through her attorneys, Christine E. Breen and Robert J. Truhlar of Truhlar and Truhlar, L.L.P., hereby files her Complaint against Defendants State Board for Community Colleges and Occupational Education ("SBCCOE"), the governing body of Colorado Community College System ("CCCS"), who is also known as and doing business as Defendant Pikes Peak Community College ("Defendant PPCC"), hereinafter collectively referred to as "Defendants" or "PPCC,"  and in support thereof states as follows:

### PRELIMINARY STATEMENT

1.      As a member of a protected class under state and federal anti-discrimination laws, Dr. Kopteva suffered discrimination and adverse employment actions, including retaliation, by Dr. Kopteva's employer, PPCC.

2.     Dr. Kopteva brings this action for damages as a result of PPCC's discrimination against her based on her Russian national origin, her age, her gender as a woman, and for retaliation in response to her participating in protected activity.

3.     PPCC acted in retaliation for Dr. Kopteva reporting PPCC's discriminatory actions against her due to Dr. Kopteva's protected classes.

4.     PPCC adversely altered the terms and conditions of Dr. Kopteva's employment and failed to promote Dr. Kopteva, in violation of state and federal law.

5.     Dr. Kopteva brings claims against PPCC pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); and the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401, *et seq* ("CADA").

## PARTIES

6.     At all relevant times during her employment with PPCC, Dr. Kopteva was an individual who was a resident and domiciliary of Colorado.  At all times relevant to this Complaint, Dr. Kopteva is and was a member of a protected class of individuals recognized under Title VII and CADA.

7.     Defendant SBCCOE oversees CCCS in its operations and governance of the thirteen community colleges in Colorado, including PPCC. SBCCOE's principle office is located at 9101 E. Lowry Blvd., Denver, Colorado, 80230. At all relevant times, SBCCOE was an employer within the meaning of CADA and Title VII.

8.     Defendant CCCS oversees and governs all thirteen community colleges in Colorado, including Defendant PPCC. CCCS' principle office is located at 9101 E. Lowry Blvd.,

Denver, Colorado, 80230. At all times CCCS oversaw the actions of PPCC and was an employer within the meaning of CADA and Title VII.

9.      Defendant PPCC is a post-secondary educational institution with its principal office located at 5675 S. Academy Boulevard, Colorado Springs, Colorado 80906.  At all relevant times, PPCC was an employer within the meaning of CADA and Title VII.

10.     SBCCOE, CCCS, and PPCC are collectively referred to as "Defendants" or "PPCC."

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction over Dr. Kopteva's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), (a)(4). This Court also has jurisdiction pursuant to 28 U.S.C. § 1367 for supplemental jurisdiction over Dr. Kopteva's state claims.

12.     Venue is proper under 28 U.S.C. § 1391 because the conduct complained of herein occurred in the State of Colorado.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

13.     Dr. Kopteva incorporates by reference all paragraphs of this Complaint as though fully and separately stated herein.

14.     Dr. Kopteva dually filed her initial Charge of Discrimination, Number FE2019558303 with the Colorado Civil Rights Division ("CCRD") for national origin, age, and gender discrimination and retaliation, and Number 32A-2019-00229 with the U.S. Equal Employment Opportunity Commission ("EEOC"), for national origin, age, and gender discrimination and retaliation on December 20, 2018.

15.    Dr. Kopteva was mailed a Right to Sue determination from the CCRD on February 4, 2020.

16.    The EEOC is evaluating and considering its own substantial weight review of Dr. Kopteva's above-referenced Charge, with a response forthcoming.

17.    At the time of this filing, a Notice of Right to Sue has not been issued from the EEOC regarding Dr. Kopteva's above-referenced Charge.  Dr. Kopteva will amend this Complaint and Jury Demand upon receipt of a Notice of Right to Sue from the EEOC.

18.    The Complaint in this matter is timely filed within 90 days of mailing of the Right to Sue from the CCRD.

## GENERAL ALLEGATIONS

19.    Dr. Kopteva incorporates by reference all paragraphs of this Complaint as though fully and separately stated herein.

20.    Dr. Kopteva is a Russian woman born in May of 1963.

21.    Dr. Kopteva moved to the United States from Russia in 2003.

22.    Dr. Kopteva speaks clear and fluent English.

23.    Dr. Kopteva does speak with a Russian accent when speaking English.

24.    Dr. Kopteva's Russian accent does not interfere with her ability to perform her job.

25.    Defendant PPCC is a post-secondary educational institution.

26.    Dr. Kopteva has worked for PPCC as an adjunct faculty member in the Geography Department since 2005.

27.     In Dr. Kopteva's role as an adjunct faculty member, she has taught, on multiple occasions, every Geography course offered by PPCC, as well as other courses no longer offered by PPCC.

### *Dr. Kopteva's Qualifications*

28.     Throughout her time working for PPCC, Dr. Kopteva met or exceeded her employer's legitimate performance expectations.

29.     Dr. Kopteva received her Masters of Science from St. Petersburg State University in St. Petersburg, Russia, completing 35.5 semester credits of Earth Sciences/Geography and graduating with honors in 1985.

30.     Dr. Kopteva obtained her Ph.D. in Geography from St. Petersburg State University in 1989.

31.     Dr. Kopteva has extensive teaching experience, having taught as an Associate Professor for eight years at St. Petersburg State University and for two years at Montana State University prior to accepting a position as a Lecturer with the University of Colorado in Colorado Springs ("UCCS") and as an adjunct faculty member at PPCC, both in 2005. Dr. Kopteva taught for a total of seven years at Montana State University.

32.     Throughout her time working for PPCC, Dr. Kopteva consistently received high marks on her performance evaluations from various department chairs.

33.     Throughout her time working for PPCC, Dr. Kopteva consistently received excellent reviews from students.

34.     In Fall 2018, Dr. Kopteva's performance reviews ranked her higher than the Geography Department as a whole.

35.     On Dr. Kopteva's performance evaluation dated April 19, 2017, Geography Chair, Amy Filipiak, stated that Dr. Kopteva "has been a model instructor."  Ms. Filipiak further stated that Dr. Kopteva's "lectures have a conversational feel…very relaxed and easy to listen to," and that Dr. Kopteva is "very comfortable with and knowledgeable about geography!"  Ms. Filipiak concluded the evaluation by noting, "Irina does a WONDERFUL job." (emphasis in original).

### *PPCC Fails to Hire and Fails to Promote Dr. Kopteva*

36.     On multiple occasions during Dr. Kopteva's employment with PPCC, Dr. Kopteva applied for various full-time faculty positions with PPCC for which she was not hired.

37.     PPCC regularly hired American-born persons who did not speak with a Russian accent into the positions for which Dr. Kopteva applied.

38.     In or around 2010, Dr. Kopteva applied for and was denied a Career Counselor position for which she was qualified.

39.     Rather than hiring Dr. Kopteva in the Career Counsel position, PPCC hired an American-born person who did not speak with an accent.

40.     In 2013, Dr. Kopteva applied for an opening for a full-time Geography Faculty Position.

41.     The full-time Geography Faculty Position included higher pay than that of an adjunct faculty position as well as greater benefits, such as increased contributions to retirement, as well as increased amounts of paid sick and vacation time.

42.     PPCC did not select Dr. Kopteva for the full-time Geography Faculty Position in 2013 despite her being qualified.

43.     PPCC hired an America-born woman who spoke without an accent and was younger than and who had significantly less experience than Dr. Kopteva for the 2013 full-time Geography Faculty Position.

44.     On or about May 2018, Dr. Kopteva applied for the most recent opening for a full-time Geography Faculty position.

45.     The *minimum* qualifications for the full-time Geography Faculty position were 1) a Masters Degree from a regionally accredited institution with a minimum of 18 graduate credit hours in Geography or Geosciences; 2) three years of experience *teaching* at the college level or adult education, and; 3) a willingness and ability to teach Geography classes in the day, evening, weekdays, weekends and at multiple campuses.

46.     With a Masters Degree, a Ph.D., and over 15 years of experience teaching at the college level, Dr. Kopteva was eminently qualified for the position.

47.     Dr. Kopteva was informed by PPCC's Human Resources Coordinator, Patricia Padeway, on July 3, 2018 that Dr. Kopteva was "not selected as a finalist candidate."

48.     PPCC hired another adjunct faculty member, Mr. Kyle Anibas ("Mr. Anibas"), to fill the full-time Geography Faculty position.

49.     Mr. Anibas is a white, American born man under the age of 40 who, at the time he was selected for the position, had only 1.5 years of teaching experience.

50.     Mr. Anibas did not have the required minimum three years of teaching experience at the college level.

51.     Mr. Anibas did not meet the minimum qualifications of the full-time Geography Faculty position.

52.     The interview process for the 2018 full-time Geography Faculty position consisted of two primary stages.

53.     The first stage of the interview process for the 2018 full-time Geography Faculty position involved an objective review of each candidate's application materials to determine whether the candidates met the minimum qualifications.

54.     The first stage of the interview process involved an evaluation of each candidates' qualifications as a whole and ranked each applicant based on their qualifications, materials provided, and other relatively objective factors.

55.     As a result of the first stage of the interview process, Dr. Kopteva ranked number one on the list of candidates.

56.     Dr. Kopteva's qualifications and experience ranked well above all the other candidates.

57.     As a result of the first stage of the interview process, Mr. Anibas' application materials established that he did not meet the minimum qualifications of the full-time Geography Faculty position.

58.     Mr. Anibas, after the first stage of the interview process was not counted in the top-five candidates who would receive an interview in the second stage of the interview process.

59.     Mr. Anibas, despite not meeting the minimum qualifications, received a second stage interview only after two other persons originally on the interview list declined to move forward with the interview process.

60.     The final list of five candidates that would be given an interview in the second phase consisted to two persons who did not meet the minimum qualifications of the position: Mr. Anibas and Ms. Sylvia Brady.

61.     Dr. Kopteva was the most qualified person for the position.

62.     The second stage of the interview process consisted of an in-person teaching demonstration followed by a question and answer session with PPCC's Search and Screen Committee.

63.     The Search and Screen Committee was tasked with narrowing the field to the top three finalists for the position.

64.     The topic for the demonstration was broadly defined as having to do with Climate Change.

65.     As part of Dr. Kopteva's teaching demonstration, she discussed the various cultural, political, and environmental effects Climate Change had on different populations, including Russia, the United States, and Europe.

66.     During Dr. Kopteva's teaching demonstration, she used a traditional Russian hat as a prop and spoke in part about the Russian culture and how climate change was affecting it.

67.     Dr. Kopteva's rankings from the Search and Screen Committee for her presentation were high and ranked her in the top three finalists.

68.     Although Dr. Kopteva's ranking for her presentation were high, the comments from the Search and Screen Committee were very negative and critical of her presentation as well as her performance during the question and answer session.

69.     Despite Dr. Kopteva's vastly superior experience and qualifications for the position and the high rankings she received from the PPCC's Search and Screen Committee and Dean's Committee during her interview, PPCC's committee members nevertheless made negative and critical comments that attacked Dr. Kopteva's Russian national origin and her manner of speaking.

70.     Some of the discriminatory criticism regarding Dr. Kopteva included, but were not limited to:

(a)     Mark Izold, a full-time member of the Geology Faculty, claimed he did not understand Dr. Kopteva's use of the Russian hat she utilized as part of her presentation, and Mr. Izold went on to criticize Dr. Kopteva's mannerism of stating "eh, eh" in her presentation, which is a common expression used in the Russian culture to determine understanding;

(b)     Dr. Dennis Natali, full-time faculty member and Chair of Business, also criticized Dr. Kopteva's use of a Russian hat, which was a cultural piece.

(c)     Dr. Natali was in charge of rating minimum and preferred qualifications, but he criticized *only* Dr. Kopteva's teaching demonstration and question and answer session. Dr. Natali did not criticize the teaching demonstrations or performances of any of the other candidates, including those candidates who did not meet the minimum qualifications; and

(d)     Ms. Filipiak, also criticized Dr. Kopteva's Russian accent and manner of speaking, describing her as "having a slow, consistent pace of speech" and having "never seen her passionate in her speech."

71.     Every interviewer who knew Dr. Kopteva outside the interview process had positive things to say about Dr. Kopteva's teaching and her experience.

72.     When evaluating Dr. Kopteva for the full-time Geography Faculty Position, the faculty members and other interviewers criticized and considered Dr. Kopteva less favorable due to her Russian national origin than those candidates who were born in America.

73.     Ms. Filipiak praised Dr. Kopteva as a "hero" of the Geography Department because Dr. Kopteva was the only person with a Ph.D.

74.     Mr. Izold had Dr. Kopteva substitute some of his classes and claimed 'she did a nice job" teaching those classes.

75.     When addressing Dr. Kopteva's interview, everyone suddenly had harsh criticisms as to why Dr. Kopteva was not qualified or not fit for the full-time teaching position.

76.     At the end of the interview process, Dr. Kopteva ranked well above all candidates who met the minimum qualifications of the position.

77.     Dr. Kopteva only ranked behind Ms. Brady, who did not meet the minimum qualifications of the position because she did not meet the minimum number of years teaching at the college level.

78.     Dr. Kopteva, based on her performance during the second stage of the interview process, qualified for a top three finalist position.

79.     Because two of the finalists did not meet the minimum qualifications, Dr. Kopteva's experience and performance qualified her for the top finalist position.

80.     The three finalists selected were, in order, 1) Mr. Mitchel Stimers, age 45; 2) Ms. Brady, age 35; and 3) Mr. Anibas, age 29.

81.     Out of the three finalists selected, only one, Mr. Stimers, met the minimum qualifications.

82.     Mr. Stimers did not perform as well as Dr. Kopteva and had less experience than Dr. Kopteva.

83.     All three finalists are younger than Dr. Kopteva by at least ten or more years.

84.     All three finalists are American born.

85.     None of the three finalists spoke with an accent.

86.     None of the three finalists are Russian.

87.     During the Search and Screen Committee's review of the candidates, Ms. Brady was identified as meeting PPCC's mission of diversity because she identified her race as Hispanic.

88.     Mr. Stimers and Mr. Anibas were both white men.

89.     The notes of the Search and Screen Committee only considered Mr. Anibas, Mr. Stimers, and Ms. Brady as possible finalists.

90.     The Search and Screen Committee never considered Dr. Kopteva as a possible finalist despite her qualifications and level of performance.

91.     Mr. Anibas, as the selected finalist, started the full-time Geography Faculty position in the Fall 2018 semester.

92.     In the Fall semester of 2018, another adjunct faculty member retired partway through the semester, leaving his class without an instructor.

93.     Although Mr. Anibas had only a couple months earlier been selected over Dr. Kopteva into the full-time Geography Faculty position, he was not asked to fill in for the retired professor.

94.     Ms. Filipiak reached out to Dr. Kopteva to ask if Dr. Kopteva would be willing to take over the class starting October 9, 2018.

95.     In an email to Dr. Kopteva on October 1, 2018, Ms. Filipiak wrote:

> "I know that you already have a full load, and if you are unable to take this course over, I understand. ***You are our best option***, as we have no other instructors who have taught this course.  I can put in someone who has not taught it, but that is a rough road for students." (emphasis added).

96.     Mr. Anibas was so lacking in experience relative to Dr. Kopteva that Ms. Filipiak, who was one of Mr. Anibas' references for the full-time Geography Faculty position, asked Dr. Kopteva, ***not*** Mr. Anibas, to fill in for the instructor who retired.

97.     Dr. Kopteva possessed the greatest qualifications and experience for the full-time Geography Faculty position outside of the interview process and during the interview process, as demonstrated by the Geography Department's reliance on her to teach full course loads and fill in where needed as well as by her strong performance during the interview process.

98.     It was only until Dr. Kopteva, with her Russian cultural props and speaking with her Russian accent and mannerisms sought a full-time position with PPCC that would have given her greater security, salary, and benefits, that PPCC considered Dr. Kopteva unfit for the position.

99.     PPCC's refusal to put Dr. Kopteva forward as a finalist and to hire her into the position is clearly pretext for its discriminatory animas against Dr. Kopteva's Russian national origin, her gender and/or her age.

### *Dr. Kopteva Reports PPCC's Violations*

100.    PPCC has a pattern and practice of discriminating against Dr. Kopteva due to her Russian national origin and due to her age and gender, which continues into the present.

101.    From 2008 and to present, Dr. Kopteva repeatedly engaged in protected activity by reporting and complaining about the discrimination and retaliation to which PPCC was subjecting her.

102.    PPCC's discriminatory bias against Dr. Kopteva's Russian national origin manifested in 2008, only three years after Dr. Kopteva was hired on as an adjunct professor.

103.    In 2008, Dr. Kopteva also taught GIS classes, which were part of the Geography department.

104.    As part of her teaching GIS courses, Dr. Kopteva earned an additional $20,000.00 a year on top of her adjunct professor salary.

105.    In 2008, Dr. Kopteva played an integral role in obtaining a Grant from the National Science Foundation for teaching GIS Courses ("the NSF Grant").

106.    As part of the NSF Grant, Dr. Kopteva needed to obtain a CTE Certificate so that she could teach specific classes offered under the NSF Grant.

107.    Dr. Kopteva secured a temporary CTE Certificate.

108.    In order to obtain the permanent CTE Certificate, Dr. Kopteva had to complete a course on technical education within a specific timeframe and needed her department chair, Ms. Donna Arkowski, to sign off on the permanent credentialing.

109.    During the credentialing process, Ms. Arkowski sent Dr. Kopteva an email on July 31, 2008 telling Dr. Kopteva that her "Russian Ph.D. won't cover it."

110.    By telling Dr. Kopteva her Russian education won't cover it, Ms. Arkowski was criticizing Dr. Kopteva's Russian Ph.D. and claiming it did not count in the NSF Grant credentialing process.

111.    Dr. Kopteva complained to Mr. Carlton Brooks, Executive Director of Human Resources, about Ms. Arkowski's discriminatory comment about her Russian Ph.D. as well as other comments she received regarding her work as a GIS instructor for PPCC.

112.    After Dr. Kopteva complained to Mr. Brooks about Ms. Arkowski, Dr. Kopteva had completed the final requirements for the permanent credentials and asked Ms. Arkowski to sign off on the permanent CTE Certificate.

113.    Ms. Arkowski refused to sign off on Dr. Kopteva's permanent CTE Certificate despite the fact that Dr. Kopteva had completed all of the requirements.

114.    After Dr. Kopteva complained to Mr. Brooks about Ms. Arkowski, Ms. Arkowski removed Dr. Kopteva from teaching GIS courses, which cost Dr. Kopteva $20,000.00 per year that she received for teaching GIS courses.

115.    Ms. Arkowski also allowed the NSF Grant to expire and never sought to renew it.

116.    In addition to Ms. Arkowski's statement regarding Dr. Kopteva's Russian education, Dr. Kopteva received at least three other comments from PPCC Geography Department employees criticizing Dr. Kopteva's Russian experience and education.

117.    Despite reporting Ms. Arkowski's discriminatory conduct to Mr. Brooks, no action was taken by PPCC to remedy the situation.

118.    Dr. Kopteva continued to report that she was not being afforded an equal opportunity to interview for and promote within PPCC based on protected classes.  Yet, PPCC

allowed the unlawful discrimination to continue and, upon information and belief, no disciplinary or other corrective action was taken against Ms. Arkowski or any other PPCC employees for same.

119.    On November 30, 2018, Dr. Kopteva filed an internal complaint with PPCC's Human Resources complaining of discrimination based on her Russian national origin, her age, and her gender, and retaliation.

120.    On December 20, 2018, Dr. Kopteva filed her Charge of Discrimination with the CCRD and EEOC for discrimination based on her Russian national origin, her age, and her gender, and retaliation.

121.    On April 18, 2019, PPCC alleged that Dr. Kopteva's internal complaint did not bear merit and that no discrimination had occurred.

122.    On April 25, 2019, one week after PPCC decided no discrimination occurred, Dr. Kopteva appealed PPCC's decision.

123.    On April 25, 2019, Ms. Filipiak announced that the Fall 2019 instructor assignments would appear soon.

124.    Dr. Kopteva filed two additional complaints with PPCC, one on June 18, 2019 and another on February 17, 2020, alleging continued discrimination and increased retaliation.

125.    Dr. Kopteva filed an amended charge of discrimination against PPCC alleging continued discrimination and increased retaliation on October 1, 2019.

### *PPCC Retaliates Against Dr. Kopteva*

126.    After Dr. Kopteva engaged in protected activity through the internal complaint process and the CCRD in November and December 2018, the PPCC Geography Department reduced the number of credit hours Dr. Kopteva would be teaching in the Fall 2019 semester.

127.    The number of courses Dr. Kopteva teaches each semester directly effects the amount of money she earns.

128.    PPCC *only* reduced Dr. Kopteva's credit hours for the Fall 2019 semester.

129.    No other professor, adjunct or otherwise, in the Geography Department had their credit hours reduced.

130.    Traditionally, the PPCC Geography Chair would inform a professor if their credit hours were being reduced in advance and work with that professor.

131.    PPCC did not provide Dr. Kopteva with any advanced notice that her credit hours would be reduced.

132.    Not providing Dr. Kopteva with advanced notice of the reduction in her credit hours is inconsistent to traditional and past practice.

133.    Instructor assignments for the upcoming semester were traditionally issued much earlier than when Ms. Filipiak had announced for Fall 2019.

134.    Ms. Filipiak did not announce professor teaching assignments until late April/Early May 2019 for the Fall 2019 semester.

135.    For the Fall semesters, instructor assignments are usually discussed in February and assigned no later than March.

136.    Additionally, if there was ever a change in course load, the Geography Chair would speak to the instructor who experienced the reduced course load, advise them of the reasons for the reduction, and offer an alternative course if possible.

137.    After Dr. Kopteva complained about discrimination and retaliation, Ms. Filipiak did not provide Dr. Kopteva any advanced notice that her credit hours would be reduced.

138.    After Dr. Kopteva complained about discrimination and retaliation, Ms. Filipiak did not offer Dr. Kopteva any alternate teaching opportunities to increase her credit hours for Fall 2019 or Spring 2020.

139.    Ms. Filipiak's actions of not providing Dr. Kopteva with advanced notice of her reduced credit hours and not offering alternative teaching opportunities are inconsistent to Ms. Filipiak's typical and past practices prior to Dr. Kopteva filing her complaints.

140.    Ms. Filipiak did not change her regular practices as they related to other Geography faculty who had not complained.

141.    Dr. Kopteva promptly filed an internal complaint with PPCC regarding the reduction in credit hours in June 2019.

142.    PPCC alleged that one of Dr. Kopteva's courses was experiencing low enrollment.

143.    There was no sign of low enrollment in any of her courses.

144.    Dr. Kopteva had experienced steady enrollment in the courses she taught, including the Geography 101 course that PPCC claimed experienced low enrollment.

145.    Ms. Filipiak excluded Dr. Kopteva from any conversations about alleged low enrollment during the summer, which, prior to Dr. Kopteva filing an internal complaint and a Charge of Discrimination, Dr. Kopteva would have been part of that discussion early on.

146.    PPCC only reduced one instructor's credit hours for Fall 2019 – Dr. Kopteva's – and only after Dr. Kopteva internally complained of discrimination and retaliation and filed a Charge of Discrimination with the CCRD and EEOC.

147.    PPCC reduced Dr. Kopteva's tutoring hours.

148.    Dr. Kopteva's tutoring hours, in addition to the hours for the courses she taught, allowed Dr. Kopteva to meet the threshold for health insurance through PPCC.

149.    Due to PPCC's reduction of Dr. Kopteva's tutoring hours, Dr. Kopteva lost her health insurance through PPCC.

150.    Due to PPCC's reduction of Dr. Kopteva's tutoring hours, Dr. Kopteva saw a reduction in her income.

151.    Dr. Kopteva also experienced a decrease in collegial communications and interactions with PPCC employees since filing her complaints.

152.    Ms. Filipiak and other members of the Geography Department and the Health and Sciences Division noticeably decreased their interactions with Dr. Kopteva, causing her to feel isolated.

153.    After Dr. Kopteva filed her complaint and CCRD Charge in November and December 2019, Dr. Kopteva walked into a classroom where Mr. Anibas and Dean of Health and Sciences Kristin Johnson ("Dean Johnson") were talking.

154.    When Dr. Kopteva walked into the classroom, Mr. Anibas and Dean Johnson immediately stopped talking mid-conversation, refused to greet or acknowledge Dr. Kopteva, and left the room hurriedly.

155.    Prior to Dr. Kopteva filing her complaints, Mr. Anibas and Dean Johnson would generally greet Dr. Kopteva, exchange pleasantries with Dr. Kopteva, and even engage in conversation with Dr. Kopteva.

156.    Dr. Kopteva has experienced similar alienating activity from other professors in the Geography department.

157.    Dr. Kopteva has experienced similar alienating activity from other PPCC faculty and staff who were part of the Search and Screen Committee.

158.    Traditionally, Dr. Kopteva would teach two classes over the summer, but due to the unfriendly and isolating environment to which PPCC has subjected her, Dr. Kopteva only took on one class for the summer.

159.    In the Spring 2019 semester, after Dr. Kopteva filed her complaints with PPCC and her Charge of Discrimination, PPCC engaged in further retaliatory conduct when it contacted Dr. Kopteva's other employer, UCCS.

160.    Dr. Kopteva is also employed as a Geography instructor at UCCS.

161.    PPCC informed the Geography Chair at UCCS of Dr. Kopteva's claims against PPCC.

162.    PPCC had an obligation under its own policy, Colorado Community College System Policy SP 3-50: Civil Rights Grievance and Investigation Process, to keep Dr. Kopteva's complaints confidential.

163.    After PPCC shared this information with UCCS, the Geography Chair at UCCS approached Dr. Kopteva about the claims of discrimination and retaliation she brought against PPCC.

164.    When Dr. Kopteva inquired about how UCCS became aware of her claims, the UCCS Geography Chair responded that "people talk," that she and Ms. Filipiak talk all the time, and that another dually employed Geography instructor of UCCS and PPCC made her aware of the legal matter.

165.    PPCC interfered with Dr. Kopteva's other employment at UCCS.

166.     PPCC subjected Dr. Kopteva to the ongoing discrimination identified in the paragraphs above and retaliated against her for reporting the same and/or due to Dr. Kopteva's protected classes.  In doing so, PPCC adversely altered the terms and conditions of Dr. Kopteva's employment and failed to promote Dr. Kopteva, in violation of state and federal law.

### FIRST CLAIM FOR RELIEF
**(Discrimination Based on National Origin in Violation of the Colorado Anti-Discrimination Act, C.R.S. § 24-34-301, *et seq.*)**

167.     Dr. Kopteva incorporates by reference paragraphs 1 through 166 of this Complaint as though fully and separately stated herein.

168.     Defendants' above-described conduct constitutes discrimination based on Dr. Kopteva's Russian national origin in violation of CADA.

169.     Dr. Kopteva was highly qualified for the full-time Geography Faculty Position.

170.     Defendants subjected Dr. Kopteva to less favorable terms and conditions of employment based on her Russian national origin including, but not limited to, failing to promote Dr. Kopteva.

171.     In unlawfully discriminating and retaliating against Dr. Kopteva, Defendants acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Dr. Kopteva's equal rights under law.

172.     As a direct and proximate result of Defendants' actions, Dr. Kopteva has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience, and she is entitled to such general and compensatory damages, economic damages, and attorney fees and costs as permitted by law.

## SECOND CLAIM FOR RELIEF
**(Discrimination Based on Age in Violation of the Colorado Anti-Discrimination Act, C.R.S. § 24-34-301,** *et seq.***)**

173.    Dr. Kopteva incorporates by reference paragraphs 1 through 172 of this Complaint as though fully and separately stated herein.

174.    Defendants' above-described conduct constitutes discrimination based on Dr. Kopteva's age over 40 years old in violation of CADA.

175.    Dr. Kopteva was highly qualified for the full-time Geography Faculty Position.

176.    Defendants subjected Dr. Kopteva to less favorable terms and conditions of employment based on her age over 40 years old including, but not limited to, failing to promote Dr. Kopteva.

177.    In unlawfully discriminating and retaliating against Dr. Kopteva, Defendants acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Dr. Kopteva's equal rights under law.

178.    As a direct and proximate result of Defendants actions, Dr. Kopteva has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience, and she is entitled to such general and compensatory damages, economic damages, and attorney fees and costs as permitted by law.

## THIRD CLAIM FOR RELIEF
**(Discrimination Based on Gender in Violation of the Colorado Anti-Discrimination Act, C.R.S. § 24-34-301,** *et seq.***)**

179.    Dr. Kopteva incorporates by reference paragraphs 1 through 178 of this Complaint as though fully and separately stated herein.

180.    Defendants' above-described conduct constitutes discrimination based on Dr. Kopteva's gender as a woman in violation of CADA.

181.    Dr. Kopteva was highly qualified for the full-time Geography Faculty Position.

182.    Defendants subjected Dr. Kopteva to less favorable terms and conditions of employment based on her gender as a woman including, but not limited to, failing to promote Dr. Kopteva.

183.    In unlawfully discriminating and retaliating against Dr. Kopteva, Defendants acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Dr. Kopteva's equal rights under law.

184.    As a direct and proximate result of Defendants' actions, Dr. Kopteva has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience, and she is entitled to such general and compensatory damages, economic damages, and attorney fees and costs as permitted by law.

## FOURTH CLAIM FOR RELIEF
### (Retaliation in violation of the Colorado Anti-Discrimination Act, C.R.S. § 24-34-301, *et seq.*)

185.    Dr. Kopteva incorporates by reference paragraphs 1 through 184 of this Complaint as though fully and separately stated herein.

186.    Dr. Kopteva participated in statutorily protected activity by opposing unlawful practices under CADA, including discrimination and retaliation based on Dr. Kopteva's national origin, sex, and/or age when she opposed discriminatory behavior.

187.    As a result of Dr. Kopteva's protected opposition to discrimination, Defendants retaliated against her by subjecting her to less favorable terms and conditions of employment as described in this Complaint.

188.    In unlawfully discriminating and retaliating against Dr. Kopteva, Defendants acted

willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Dr.

Kopteva's equal rights under law.

189.    As a direct and proximate result of Defendants' above-described conduct, Dr.

Kopteva has suffered damages, including lost wages and benefits, emotional pain and suffering,

embarrassment, and inconvenience, and she is entitled to such general and compensatory damages,

economic damages, and attorney fees and costs as permitted by law.

### FIFTH CLAIM FOR RELIEF
**(Discrimination and Failure to Promote Based on National Origin in Violation of Title VII
of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*
("Title VII"))**

190.    Dr. Kopteva incorporates by reference paragraphs 1 through 189 of this Complaint

as though fully and separately stated herein.

191.    Based on the above-described acts, practices, and omissions, Defendants engaged

in unlawful discrimination under Title VII because of Dr. Kopteva's Russian national origin.

192.    At all pertinent times, Dr. Kopteva performed the functions of her job

competently and was more than qualified for promotions.

193.    Dr. Kopteva is an "employee" as defined in 42 U.S.C. § 2000e(f).

194.    Defendants are an "employer" as defined in 42 U.S.C. §§ 2000e(b).

195.    Title VII prohibits discrimination based on national origin in employment.

196.    Defendants treated Dr. Kopteva less favorably than her similarly situated non-

Russian counterparts.

197.    Defendants' discrimination was aimed at Dr. Kopteva because of her national

origin, resulting in adverse impacts to the terms and conditions of Dr. Kopteva's employment

including, but not limited to, denial of promotions, hiring into full-time positions, and discriminatory terms and conditions of employment.

198.    Despite her superior qualifications and successful job performance, Defendants refused to promote Dr. Kopteva, in whole or in part, because of national origin.

199.    Defendants promoted and hired non-Russian persons into the positions for which Dr. Kopteva was qualified.

200.    Dr. Kopteva's Russian national origin was a motivating factor in Defendants' failure to promote Dr. Kopteva.

201.    Defendants' asserted reasons for failing to promote Dr. Kopteva are mere pretext for illegal discrimination.

202.    Defendants are liable for the acts and/or omissions of its agents and employees. Defendants, either directly or by and through its agents, discriminated against Dr. Kopteva on the basis of her national origin and directly and proximately caused her severe injuries, economic and non-economic damages, including emotional distress, and losses.

203.    Defendants' acts and conduct were committed with malice or with reckless indifference to Dr. Kopteva's federally protected rights within the meaning of Title VII.

204.    The unlawful employment practices complained of above were and are intentional.

## SIXTH CLAIM FOR RELIEF
**(Discrimination and Failure to Promote Based on Gender in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"))**

205.    Dr. Kopteva incorporates by reference paragraphs 1 through 204 of this Complaint as though fully and separately stated herein.

206.    Based on the above-described acts, practices, and omissions, Defendants engaged in unlawful discrimination under Title VII because of Dr. Kopteva's female gender.

207.    At all pertinent times, Dr. Kopteva performed the functions of her job competently and was more than qualified for promotions.

208.    Dr. Kopteva is an "employee" as defined in 42 U.S.C. § 2000e(f).

209.    Defendants are an "employer" as defined in 42 U.S.C. §§ 2000e(b).

210.    Title VII prohibits discrimination based on gender in employment.

211.    Defendants treated Dr. Kopteva less favorably than her similarly situated male counterparts.

212.    Defendants' discrimination was aimed at Dr. Kopteva because of her gender, resulting in adverse impacts to the terms and conditions of Dr. Kopteva's employment including, but not limited to, denial of promotions and discriminatory terms and conditions of employment.

213.    Despite her superior qualifications and successful job performance, Defendants refused to promote Dr. Kopteva, in whole or in part, because of her gender.

214.    Defendants promoted and hired males into the positions for which Dr. Kopteva was qualified.

215.    Dr. Kopteva's gender was a motivating factor in Defendants' failure to promote Dr. Kopteva.

216.    Defendants' asserted reasons for failing to promote Dr. Kopteva are mere pretext for illegal discrimination.

217.    Defendants are liable for the acts and/or omissions of its agents and employees. Defendants, either directly or by and through its agents, discriminated against Dr. Kopteva on the

basis of her gender and directly and proximately caused her severe injuries, economic and non-economic damages, including emotional distress, and losses.

218.     Defendants' acts and conduct were committed with malice or with reckless indifference to Dr. Kopteva's federally protected rights within the meaning of Title VII.

219.     The unlawful employment practices complained of above were and are intentional.

## SEVENTH CLAIM FOR RELIEF
### (Retaliation in Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*)

220.     Dr. Kopteva incorporates by reference paragraphs 1 through 219 of this Complaint as though fully and separately stated herein.

221.     Dr. Kopteva's opposition and complaints regarding Defendants' unlawful discrimination were protected activities within the meaning of Title VII.

222.     Defendants unlawfully retaliated against Dr. Kopteva in the terms and conditions of her employment and subjected Dr. Kopteva to retaliatory treatment because she engaged in the above-described statutorily protected activities.

223.     Defendants further failed and refused to take corrective action that would prevent Dr. Kopteva from being subjected to further discrimination and retaliatory treatment.

224.     A causal connection exists between Dr. Kopteva's protected activities and Defendants' unlawful retaliation.

225.     Defendants' above-described retaliatory conduct, including its reduction of Dr. Kopteva's course load, is of the type that would be materially adverse to a reasonable employee and chill such employee's willingness to engage in protected activity, such as opposing discrimination by making internal reports of same to management for Defendants.

226.    In unlawfully discriminating and retaliating against Dr. Kopteva, Defendants acted willfully, wantonly, and/or with malice or with the conscious and/or reckless indifference to Dr. Kopteva's equal rights under law.

227.    As a result of Defendants' retaliatory conduct, Dr. Kopteva has suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience, and she is entitled to general and compensatory damages, and economic damages including front and back pay.  Dr. Kopteva is also entitled to and seeks her attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dr. Irina Kopteva respectfully requests that this Court enter judgment in her favor against Defendants and order all economic and noneconomic damages including the following relief as allowed by law:

A.    Back pay and benefits;

B.    Front pay and benefits;

C.    Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;

D.    Attorneys' fees and costs of this action (including expert witness fees), as permitted by law;

E.    Pre-judgment and post-judgment interest at the highest lawful rate; and

F.    Such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable to at least six (6) persons.

Respectfully submitted this 1st day of May 2020.

Truhlar and Truhlar, LLP.

*s/ Christine E. Breen*
Christine E. Breen
Robert J. Truhlar
7340 E. Caley Ave., Suite 310
Centennial, CO 80111
Phone: 303.794.2404
Fax: 303.794.1142
Email: cbreen.truhlar@gmail.com
        roberttruhlar@att.net
*Attorneys for Plaintiff*

Plaintiff's Address:
165 Odessa Place
Colorado Springs, Colorado 80906